Mr. Fox, we'll start with you. Thank you. Good morning, Your Honors. It pleases the Court. My name is Ed Fox. I represent the Plaintiff Appellant. The District Court granted the Defendant's Summary Judgment Motion and found there was arguable probable cause to arrest and thus qualified immunity because it decided that there was a tentative identification of the plaintiff at a show-up. We're appealing this case in large part because there was not an undisputed tentative identification at the show-up. And that was the finding that swung her to the District Court to believe there was arguable probable cause. Sergeant Hoover, in this case, in his report, he documented what the witness stated at the show-up. The witness' name was Marina Clausell. She viewed the show-up, and according to Sergeant Hoover, she readily identified the shooter. And with regard to the second person at the show-up who was my client, Kiontae Mack, she only said, quote, he might be the person who was with, close quote, the shooter. And that's all she said. Sergeant Hoover, who conducted the show-up, he himself determined from this that she was unsure one way or the other of whether or not this person, who turned out to be Mack, was the person that was with the shooter. So he was asked at his deposition why he didn't ask for any clarification of the statement that he might be the shooter. And this was his testimony. It's a quote from his deposition. She had already stated that he was not the person that shot the victim. And she said that he might be the person that was with him, which I interpreted to mean that she was already unsure. So I didn't question her further. I didn't want to push her one way or the other. Consistent with this, and based upon this alone, Brianna Clausell cannot be deemed a reliable witness of a show-up in identifying Mr. Mack because she was unsure. But consistent with this, at his deposition also, Sergeant Hoover was asked why he sent Keontae Mack to the police station if the witness could not identify him. Sergeant Hoover didn't disagree with the premise of the question at his deposition that she was unable to identify Mack, but rather he only testified that the reason why he sent her to the police station was, quote, I felt that the detectives needed to continue their investigation and decide whether he was involved or should be released without charging. And that was all he had. And case law has decided that when there's a Terry stop made and officers do somewhat of an investigation during the Terry stop, and the Terry stop does not yield probable cause, even if their suspicions still remain, they have to release the suspect because they don't have probable cause. And that's probably what happened here. There was no probable cause because there was no identification. And Mr. Fox, can you give us an example of something that you think would actually constitute a tentative identification? Sure. And in the case laws, we decided to talk about this. So if somebody says that looks like the suspect, that's a tentative identification that resembles the suspect. That's a tentative identification. This person is dressed similarly to what the suspect was dressed like. That's a tentative identification. None of that happened here to indicate in any way meaningfully that she thinks that this is the suspect or that this looks like the suspect. Mr. Fox, let's move to the QI portion of Hoover. We have case law that talks about probable cause and then arguable probable cause distinction made between the two for purposes of qualified immunity. Offering the arguable probable cause may be a lesser standard than probable cause. How does that factor into the qualified immunity analysis specifically with regard to Hoover? Okay. Well, the district court found there was arguable probable cause because it was a tentative identification. But there was no tentative identification and she found it was a reasonable mistake as a result. And the only other evidence against Keanu Mac was he was located in the area. That was one piece of evidence. And the second piece of evidence was when he was detained, he was completely cooperative with the detaining officers, answered their questions, and showed them his ID. And then the third piece of evidence was the show-up. And Judge Jenkins is talking about clearly established law with regard to arguable probable cause. It determines that's a basis such that Hoover could not be held liable. What's your response to that? So with respect to clearly established law, you're not going to find a case on all fours that says if you don't have an identification at a show-up, you don't have probable cause. And he should have known that because this situation doesn't arise. But there are many cases that say if you have a single reliable, credible witness, that's enough for probable cause. We didn't have a single reliable witness and those cases have been around for decades. We didn't have a single reliable witness that said that that was the person. Mr. Fox, didn't the officer also have the input of the University of Chicago police officers that said that they had heard, you know, the call go out over their radio and that they detained two people, you know, that, let's see, that they detained Tucker, but they also detained a second subject that they thought was announced over the radio. Wouldn't that also be additional information that Sergeant Hoover had when making his determination? Sure. And the fact is two officers picked these two people up. They picked them up in different, not together, they picked them up and they brought them to the scene. That again is only saying that Keontae Mack was in the area. It's not giving any additional information other than what he already knew. And Sergeant Hoover testified in his deposition that he didn't get any other information other than what Your Honor has just indicated about that. And the reason why I say that is some disputed evidence that the University of Chicago officers said they spotted my client and Tucker together and then Tucker ran, but that was never, A, my client disagreed with that. He said he never was walking with Tucker and B, the testimony from Sergeant Hoover is they never told him that. So that wasn't part of the equation at all. And even if that wasn't part of the equation. Isn't there a third? Because the UC, the University of Chicago Police Department report stated quote, Breonna could not positively identify Mack Keontae, suspect number one as a suspect. Yeah, I'm sorry. And that was the point I was going to come to because not only did their tentative identification didn't occur, but all of the officers that were either present at or near the scene and or who talked to Hoover about it near the time of the incident, they both wrote, the both sets of officers wrote only that Breonna Klosel could not positively identify. They didn't write anything about a tentative identification whatsoever. And the inference that should be made, to the extent an inference needs to be made, that there was no identification is because the first report, police report that indicated there was a tentative identification was a falsified police report. So this police report was written three hours after Barnes, who's the attesting officer on this falsified police report. This was written three hours later after he wrote his initial report where he does not describe a tentative identification. In the subsequent report at 930, he describes a tentative identification. And then when he, under penalty of perjury, as it says on his police report. And you're talking about the supplemental report. Correct. Is that the second report? Yeah. Correct. And then this is his arrest report actually. And when he was asked at his deposition about the arrest report and about his attestation on the arrest report, he says, that's not my signature. I never saw the report. I didn't write the report. So the first report talking about a tentative ID is a falsified report. And from that, there should be negative inferences taken about the quality of the identification because why would they have to falsify a report and why wouldn't the real author of the report come forward if there was not something to hide? So that's the evidence that went into with the reports. The only other reports that describe a tentative identification were made by detectives who weren't at the scene of the show up at all. And they were the ones that participated in showing the single photograph of Brianna Kessel, of the suspect. So the other thing that I think... I'm sorry. I guess I'm a little confused. So the supplemental report, right? That's dated August 25th and at 7 a.m. 0700 hours. You're saying that Sergeant Hoover disavowed any of the statements in that report? No, that's Sergeant Hoover's report you're referring to. He did not disavow the statements in the report. That's the report, I believe, if I'm referring to the right report, where he just says, Brianna Kessel stated that might be the person that was with the shooter. Right. Isn't that a tentative ID that he might be the person who was with the shooter? Well, it's not because... It's not at all because as I just... I read from his deposition where we asked that question about that statement. And he said, and I'll read it again because it is so important. He was asked about that statement and why he didn't ask further questions to clarify it. And here's what he stated. Quote, she had already stated that he was not the person that shot the victim. And she said that he might be the person that was with him, which I interpreted to mean that she was already unsure, so I didn't question her further. I didn't want to push her one way or the other. So that was his own interpretation of the report was that she was unsure. And that's consistent with what he said a little bit later in his deposition about not disagreeing with the question that there was a failure to identify and the reason why he sent him to this police station was just for further investigation and that he might not be charged at that point. So he didn't know, he didn't believe there to be a tentative identification. And in fact, in his report, he doesn't say there was a tentative identification. So that's the, if you want to look at, you know, saying that somebody might be, that might be the person is not any different than saying that might not be the person. And so, and there was no, the other thing, there was no, there was no description of this person that was given by Breonna Klessel whatsoever. So they had nothing like that. And so when you have that and then when you have these issues and then the falsified police report and then the fact nobody described, nobody described it as a tentative identification at the time. The University of Chicago police didn't describe it as a tentative identification. They just said could not positively identify and neither did the other Chicago police officers who were present. So that answers your Honor's question. I can move on from there. And so, so because there was no identification, what happened back at the police station when Breonna Klessel got there was that the detectives that questioned her were aware of what happened out in the field and they knew they would have to get a real identification if they're going to make the charge stick. So what they did was they showed Breonna Klessel single photographs of the shooter and my client. And we all know that's a forbidden practice and you just don't do that. They've admitted to that. They didn't report it in their lengthy arrest report. They didn't report that at all about showing photographs, but they did it. And it's not disputed and it's not disputed as a forbidden practice. The defense to that as well as what the court said was we raised, they said that she, she only made that, we only showed her single photographs after she had already said that she picked them out of a lineup at the show up. And there was this huge credibility problems with that. And we pointed that out to the court and the court said, well, credibility alone is not enough to defeat summary judgment. But the credibility issues with that were that they said that she, the two detectives stated that Breonna Klessel said that she positively ID'd the suspects at the, uh, at the show up, but she didn't. Just 90 minutes before that, she didn't say that. And we know that because Sergeant Hoover said what she said at this, at there. But also, did you want to save the rest of your time for rebuttal? I'll just make one more point quickly is that there were, they gave five different reasons about why they would show a witness a single photograph. All of the, all of the reasons were inconsistent, uh, with one another. And for that reason alone, those reasons alone, the credibility issues, um, are, were enough to defeat summary judgment and a triable issue of fact on that issue should have been held. And I'll reserve the rest of my time. Thank you. Thank you, Mr. Fox. We'll now move Mr. Morrell to you for a responsive argument. Thank you, Your Honor. May it please the court. Mack was detained pending trial because an officer found probable cause to indict him. Prosecutors decided to charge him after re-interviewing both Mack and the witness. A judge found probable cause to indict him and the grand jury found probable cause to indict him. Against this backdrop, Mack asserts that the detention was unlawful, but he does not have a viable fourth amendment claim because, uh, he, his detention was supported by probable cause and the officers did not even cause his post legal process detention. What are your thoughts on, I'm sorry, go ahead. Mr. Morrell, let me stop you, please. I want, you have this list of three possible categories of identification. My problem is that I see a fourth. What about the witness simply doesn't know category. According to your brief, a tentative identification occurs where the witness is not a hundred percent sure, but indicates the suspect might have been the perpetrator. So this means that a witness who is 99% sure the suspect committed the crime has made a tentative identification. But so is the person who is 0.001% certain has a person who says, I really don't know, but there is a chance it is him really made a tentative identification. Right. So I agree. A witness identification of a suspect can fall upon a continuum of possible identifications. You could have on one end, a strong ID that is the person, a strong negative ID that's not the person. And one could imagine any number of shades of gray of confidence between those two extremes. But what we have here is a witness saying that that might be the person. The only officer who conducted this show up, who was standing there in this deposition described it as, I did not believe she was quote 100% sure. And then of course you have the other information that was talked about, um, that helped provide context for that might be identification. Um, reasonable person where you have the UCPD brought two suspects to Sergeant Hoover who they claim were seen together near the scene shortly after the shooting late at night with no one else around. And then the other suspect was positively ID. That is all context within with a reasonable person would be interpreting, uh, the witnesses statement. I think there's also important to note that, you know, the only impressions we have here of what was said was by the only two people there were the witness herself, who both at to the detectives at the station and later at trial has consistently said that I ID'd both suspects. And you have Sergeant Hoover's testimony who said that it was, she was not 100% sure, but I interpreted it as a tentative ID. Uh, in addition, it's Max Burton to show that the relevant case laws clearly established that the type of identification in this case is not, um, clearly established to establish argument, probable cause he cannot do. As far as I can see at this point, there is an issue of disputed fact about, uh, what, about what Ms. Clausell said and whether this gave the officers probable cause to arrest. There is only two statements in the record of by people about what she said, what Ms. Clausell testified herself that it, and what Sergeant Hoover said, he heard her say both of those. So there is no dispute of, of fact, because those are the only two people who were present at the show up, uh, who said what she, she said the, the, to the extent the opposing counsel is relying upon the, the incident report where they use the phrase could not positively identify officer Raisin Barnes, who are not the show up. We're asking hundreds of positions where they got that information from since they weren't there. And they said it quote, came directly from Sergeant Hoover who told them that Clausell positively ID to one offender and tentatively ID the other. So all the information about the show up necessarily came from Sergeant Hoover and Clausell who told them the Mac was pot tentatively ID. And they just described in the report using slightly different language to say the same thing. Indeed, that one sentence, your, your, your brief also states that the detective showed Clausell a single photo of Mac and Tucker to clarify which suspect was the shooter and who was the accomplice. But that is not what the detective said they used it for, is it? That is what one of the detectives I believe said they used it for. I agree there is some disagreement among the detectives about why they showed that photograph, but that is a completely separate issue from when they showed the photograph. And at the end of the day, you know, there's two different periods of detention here. There's the pre-legal process period about when they initially took him to detention. That's, we're talking about the tentative ID. And then there's the rest of the vast majority of the period of detention that was determined post Gerstein hearing. For the vast majority of Mac's pre-tentative detention, not only did you have the tentative identification, but you were supported by Mac's confession and the further interviewing of the eyewitness who told the detectives that she identified both of them. Mac's confession alone was sufficient, in fact, for probable cause. And nowhere in Mac's briefing does he really explain why his confession does not end the probable cause inquiry. Are you talking about the confession to the officers or the confession to DeBone? Well, both of them. And I think that gets to the causation issue, which I can address as well. Because when you're talking about the post-legal process period, you know, for the vast majority of time of detention, you have issues of both, was there probable cause? But then separately, independently, did the officers even cause this detention? But on the issue of probable cause, what's relevant is that he confessed. And now while Mac argues that his confession was involuntary and in violation. But if it wasn't, if she did not identify him, then we don't go any further. That means, you know, and as for the post-legal process detention, Clausal was clearly more confident in her identification of Mac as the shooting accomplished. But isn't it possible that she became so much more confident about her identification when she was influenced by being shown a single photo of Mac? Well, there's two things here. One, on that topic, again, there is absolutely no evidence in the record to put in dispute when she was shown that photograph. All, Clausal and both detectives, which are the only three people who have testified on this topic, have said that she was not shown the photograph until after she reaffirmed her identification from the show-up. The prosecutor then also showed her a single photograph, but that gets to the causation issue. As to your point about, well, do we go any further? I actually don't think that's accurate, Your Honor. Even if there was not a probable cause for the initial period of detention, the first, let's say, 12 hours, or it wasn't even that long, once he confessed and once additional evidence came in, there was then probable cause moving forward. And there was a judicial determination of probable cause at the Gerstein hearing and the indictment by the Jan jury, both of which are presumptively valid. So, while there are definitely two- We have to recall, Hoover is the only one, the only one who actually heard her. And he said, she said that Mac might, might be the person that was with the shooter, which I interpreted to mean that she was already unsure. That is what his report said at 146-9 at 37. Further, he said, she stated he might be the person that was with the subject that shot her. And that's at 38. She wasn't 100% sure. I should say she wasn't. That's at 36. The only statement she made to me was that he was not the shooter, but he might be the person, might be the person who was with the shooter. And that's at 39. And to me, those paraphrasers, paraphrases of her statements seem far more like, I don't know, rather than I'm not 100% sure, but he may have been. And anyway, I have a problem, as you can see. I will say that the might be statement in the context of the other information he had at the time was enough to establish tentative probable cause, which I will say the opposing counsel does not disagree that a tentative ID can establish probable cause. And he admits in his reply brief on page four that he found no definition in the case law of what is meant by tentative ID. Nor does he cite a single case where a trustworthy eyewitness is described as something more than a negative ID on the continuum of possibilities of confidence, but a court nevertheless held that the ID was insufficiently definite to establish probable cause to detain. There's absolutely no cases that he cites in his record, no definition of tentative ID to do that. So when we're talking about the context of least arguable probable cause of qualified immunity, that failure means that Mack has not met his burden of showing that there's clearly established law to overcome the officer's qualified immunity. But even if the tentative ID could not justify the initial arrest, which we disagree was, for the vast majority of the detention that we're talking about, it was supported by his own confession. He doesn't even explain why the confession is not enough to support the vast majority of his pretrial detention. As this court has explained in Hert v. Wise, reliability, not coercion, is the gravamen of probable cause. The detectives asked Mack open-ended questions to which he provided details that matched the details the eyewitness separately told the detectives. Even if, hypothetically, Mack only volunteered this information because of their interviewing tactics, which is not the case, there is no evidence in the record to support that a prudent person in the detective's shoes would have reason to doubt the reliability of the inculpatory statements Mack ultimately made. In addition, and this gets to Judge Brennan's point, Mack never claims that his separate interview with the assistant state's attorney was at all coercive. And during that separate interview, Mack again confessed to the crime and provided unprompted new inculpatory information for the first time, such as the model of the victim's car. Mack has no argument whatsoever for why this additional confession does not sufficiently establish probable cause. But there is a third issue that we have to address here for probable cause, for the pretrial detention, which is causation. Mack's post-legal process detention claim also fails for the lack of causation, as shown by this court's recent decision in Washington v. City of Chicago. In that case, the court explained that the chain of causation for police liability is broken when one of two things exists. Either the prosecutors perform their own independent fact-gathering before filing charges, or if the purportedly problematic evidence is taken out of consideration and the remaining evidence is still sufficient to support the judicial probable cause determination. In other words, the evidence must have actually been decisive and tipped the scales in favor of probable cause. Here, we know not only that the prosecutors did their own fact-finding, including conducting interviews of both the eyewitness and Mack, where Mack confessed again, and Klaus L seemed confident of her identification to the prosecutor. But we separately know with confidence that any purported issue with Mack's confession was not decisive for judicial probable cause, because Mack does not even claim the confession was used as a Gerstein hearing, or at any point in the case. What is your... I'm having trouble keeping up with you. What is your response to Mack's argument that a concession that initiates the criminal proceeding can be challenged under the Fifth Amendment? Well, first of all, that would not apply to his Fourth Amendment claim, which I'm sure Your Honor is aware, so it still wouldn't get him out of the causation for Fourth Amendment purposes. But if we're talking about the Fifth Amendment claim, no, it does not constitute a courtroom use under the Supreme Court's decision in Chavez. There, the Court specifically talked about the sort of use in, quote, criminal investigatory process preceding the commencement of a criminal case that the Supreme Court said was insufficient in Chavez. Now, when this Court took up the mantle after Chavez in Sornberger, this Court said that even preliminary hearings, that then would be enough. So when the Court was talking about in Sornberger these preliminary hearings, they're saying that that would be enough of a use in a criminal case when you're talking about the commencement of a criminal action, which is actually when judicial probable cause determination was found. No case that this Court has talked about since Sornberger has ever indicated that something outside an actual use in a preliminary hearing would be sufficient to be a use in a criminal case. In fact, in Jackson v. Curry in 2018, they specifically, this Court specifically talked about how Sornberger was extending the Chavez doctrine to preliminary hearings. That's not what you have here. It was, there's no argument it was used at the Gerson hearings, there's no argument it was used in the grand jury process, and there was no argument that it was used at any point in his, otherwise in his criminal case. But even on the merits of the Fifth Amendment claim, the confession was not coercive as a matter of law, because the will of a reasonable person in Mack's position would not have been overborne. Mack waived his Miranda rights multiple times to speak with detectives. The entire interview was about 16 minutes, and he started making inculpatory statements after about 10. He was not held for a long time before questioning began. He was asked open-ended questions that were not leading. He was not deprived of any physical needs, such as food, sleep, or bathroom access, nor was Mack ever offered any false promises of leniency, nor threatened. Accurately being informed that he would likely spend a long time in jail if convicted of murder is not a coercive threat that destroys his rational choice whether to speak to detectives. The detectives' interrogation was entirely within the bounds. Do we, do we, do we factor in the fact that he's 17 years old? Under this Court's precedence, the 17, the factor is not sufficient to do it, but it can, if there is, for example, improper threats, it kind of colors the way those improper threats may have been interpreted by a 17-year-old. But here, we don't have any improper threats whatsoever, so it doesn't change the, materially change the analysis. You don't think it's a threat you could be held for murder? I think accurately informing someone that they're a suspect of murder does not destroy someone's rational decision whether to speak with detectives. If anything, you would, one would imagine that they would make you more hesitant to what you said. For these reasons, the judgment of the District Court should be affirmed. Thank you, Mr. Morrell. We'll now move back to Mr. Fox for a rebuttal argument. Mr. Fox will give you three minutes. Thank you, Judge. I just want to correct one thing. There were more than just two people that testified about the show-up. Plaintiff was there, too. He testified to it. He said, he heard her say she was unsure, similar to what Sergeant Hoover's testimony was. And I want to make that point clear, that he was also there to say that. With regard to the confession, and things that were said are just not accurate, and you will have a transcript of the confession. My client was 17-years-old. He had been up all night, not sleeping, and he was wearing a paper smock and was cold when he was interrogated. But he denied being involved. He denied being involved nine times. And each time he denied being involved, Roberts would yell at him and either call him a or say, and excuse my language, but this is what he said. You'll go to fucking prison for 50 years unless you give us the truth. My client also asked for a test, a polygraph test. He was told by Roberts at one time that he denied it. Roberts said again, those tests are nonsense, and then proceeded to threaten him some more. So this was not a simple matter of him just confessing. Nine times. He was so equivocal, and didn't know so many of the core facts of this, that the prosecution didn't even use the confession at trial. And the statement to Daboney that came later was so equivocal that it was useless. And I don't even think you could really call it a confession, because he said he didn't know. He said, I don't know, to almost every third question that was asked of him at that interview. So the confession- He thought there were three women in the car. Yeah, that was one of the things he said was wrong. He thought there were three women in the car, among other things that he said was wrong. And then when he said, I don't know, Officer Roberts then offered him the facts of what he should say. Officer Roberts said, didn't he say, you want to do a lick? And then of course, he mimics it and says, yeah, I want to do a lick. But when he had the same interview in front of Daboney, he said, yeah, he said, I want to do a sting. So he couldn't keep the story straight because it wasn't a true story. Obviously, Mr. Mack won at trial. Correct. We've also had this overlay of qualified immunity, though. Correct. We got to analyze the case pursuant to that. We've had a lot of discussion about probable cause. Your final thoughts on qualified immunity? My final thoughts on it is that qualified immunity does not apply, even if there's no case on point, when the conduct is so outrageous that any officer would be aware of it without a case on force. Any officer would know that if all the evidence you have is a guy's in the area, but he cooperated with the detaining officers, and then when the witness came to do the show up, she said she was unsure, any officer would know you have not enough by a long shot to arrest somebody at that point. And there isn't going to be a case on point because, as a general rule, officers aren't going to make an arrest unless there's a reasonable identification, some sort of meaningful identification. Even if it's something meaningful, like he looks like he's similar, he's wearing the same clothes, that didn't occur here. It's just so obvious. In this case, there just isn't a case on it because it is so obviously wrong. And so those are my thoughts on it, Judge. Thank you, Mr. Fox. Thank you, Mr. Morrell. The case will be taken under revisement.